UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENIL JABIB CLAROS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SERGIO ALBARRAN, et al.,<br><br>　　　　　Defendants. | Case No. 25-cv-09473-EMC   (EMC)<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Docket No. 5 |

Petitioner Enil Jabib Claros is a non-citizen from Honduras who has lived in the United States for the past six years on supervised release. After Mr. Claros appeared for a reasonable fear interview, he was detained by ICE agents. Mr. Claros filed a petition for writ of habeas corpus and a motion for temporary restraining order. Dkt. Nos. 1 & 5. On November 5, 2025, the Court granted Mr. Claros' Motion for a Temporary Restraining Order. Dkt. No. 9. Mr. Claros now asks this Court to convert its TRO into a preliminary injunction. For the reasons stated below, the motion for preliminary injunction is **GRANTED**.

I.   **FACTUAL BACKGROUND**

Mr. Claros is 34 years old, and father to three children ages seven, nine, and fourteen. Dkt. No. 5 at 6; Dkt. No. 6-3 at 1. Mr. Claros was born in Honduras but was brought to the United States as a child and has lived in this country for most of his life. Dkt. No. 5 at 6. In April of 2011, Mr. Claros was convicted for battery. Dkt. No. 12-1. DHS encountered Mr. Claros due to his conviction and served him with a Notice to Appear. *Id.* Mr. Claros did not contest the removal order and in June of 2011 was removed from the United States. *Id.* In 2019, Mr. Claros reentered the United States with his family, seeking asylum. Dkt. No. 5 at 6.

1    Upon crossing the United States border on July 7, 2019, Mr. Claros was detained by
2  Customs and Border Patrol. Dkt. No. 12-1 ¶ 14. Mr. Claros was issued a Form I-871, Notice of
3  Intent/Decision to Reinstate Prior Order, reinstating the 2011 removal order. *Id.* ¶ 15. Mr. Claros
4  claimed a fear of returning to Honduras and was referred to Citizenship and Immigration Services
5  for a reasonable fear interview. *Id.* ICE released Mr. Claros on his own recognizance pursuant to
6  Section 236 of the immigration and Nationality Act (8 U.S.C. 1226) to await his Reasonable Fear
7  Interview. Dkt. No. 6-6 at 1. The release was subject to appearing for regular check-ins. *Id.*

8    For the next six years, Mr. Claros lived at liberty with his family in San Francisco. Dkt.
9  No. 5 at 7. In June of 2021, Mr. Claros was arrested for a felony violation of California Penal
10  Code 273.5 (domestic violence) but was not prosecuted. Dkt. No. 12-1. The San Francisco Office
11  of the District Attorney has submitted a letter stating that no formal charges were filed against Mr.
12  Claros in connection with the arrest because the matter was discharged for lack of evidence. Dkt.
13  No. 14-4.

14    On February 13, 2025, Mr. Claros filed a Form I-192, Petition for Advance Permission to
15  Enter as Nonimmigrant, as well as a Petition for U Nonimmigrant Status, which is available to
16  victims of certain criminal activity who are helpful to law enforcement in prosecuting the activity.
17  Dkt. No. 5 at 7; 8 U.S.C. § 1101(a)(15)(U). The U Petition was based on severe child abuse
18  suffered by Mr. Claros, based on which a court ordered him removed from his parents' custody.
19  *Id.*

20    On November 3, 2025, Mr. Claros appeared at the San Francisco Asylum Office for a
21  Reasonable Fear Interview, along with his counsel. Dkt. No. 1-1 ¶ 11. Mr. Claros testified about
22  the violence and death threats that he and his family suffered in Honduras for his political activity,
23  including being shot in the legs by the police at a peaceful protest and being detained and tortured.
24  *Id.* ¶12. Mr. Claros testified that in 2019, Honduran police officers ransacked his home,
25  confiscated his ID documents, physically assaulted his wife and two-year-old son, and threatened
26  to kill them. *Id.* ¶ 13. This incident was the catalyst for Mr. Claros and his family to flee to the
27  United States. *Id.*

28    After Mr. Claros testified, he was informed that he had been determined to not have a

reasonable fear of returning to Honduras. *Id.* ¶ 15. Mr. Claros told the asylum officer that he wanted an Immigration Judge to review the negative reasonable fear finding and signed a document to that effect. *Id.* ICE agents then entered the room and detained him. *Id.* ¶ 16. The ICE agents did not explain to Mr. Claros why they were arresting him beyond stating that Mr. Claros "has a deportation order." *Id.*

On November 4, 2025, Mr. Claros filed a motion for a temporary restraining order. Dkt. No. 5. On November 5, this Court granted the motion. Dkt. No. 9. The next day, ICE released Mr. Claros. Dkt. No. 10. ICE ordered Mr. Claros to appear at the ICE office on November 7 and provided him with a check-in date of November 28. Dkt. No. 14-1.

On November 10, an IJ found that Mr. Claros had a reasonable fear of persecution or torture in Honduras. Dkt. No. 14-2 (Order of Immigration Judge). The IJ vacated the prior negative Reasonable Fear Interview determination and placed Mr. Claros in withholding-only proceedings. *Id.* Mr. Claros' initial scheduling hearing in his immigration case is set for May 5, 2026. Dkt. No. 14-3.

## II. LEGAL STANDARD

A party seeking a preliminary injunction must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

A. Mr. Claros Is Likely to Succeed on the Merits, or at Least Raises Serious Questions

The Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is settled law that the Due Process clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Trump v. J. G. G.*, ––– U.S. ––––, 145 S. Ct. 1003, 1006 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").

To determine the process due, this Court and others in this district have applied the three-part test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See e.g.*, *Calderon v. Kaiser*, No. 25-CV-06695-AMO, 2025 WL 2430609, at *3 (N.D. Cal. Aug. 22, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *5 (N.D. Cal. Aug. 21, 2025); *Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110, at *4 (N.D. Cal. Sept. 3, 2025). The Ninth Circuit has "assume[d] without deciding" that *Mathews* applies in the immigration detention context. *Diaz v. Garland,* 53 F.4th 1189, 1207 (9th Cir. 2022); *see also Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at n. 2 (N.D. Cal. July 24, 2025) (collecting cases where the Ninth Circuit has applied *Matthews* in due process challenges to removal proceedings).[1]

*Mathews* requires consideration of three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the Government's interest. *Mathews*, 424 U.S. at 335. Here, all three factors suggest that Mr. Claros has a right to a pre-detention hearing before a neutral arbiter.

1. Mr. Claros Has a Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of

---

[1] While the Government does not "concede" that the *Mathews* test governs, the Government offers no argument that it does not, beyond the fact that the Supreme Court has never directly held that *Mathews* applies in this particular immigration detention context. Dkt. No. 12 at 8.

4

1  physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."
2  *Zadvydas*, 533 U.S. at 690. "A protected liberty interest may arise from a conditional release from
3  physical restraint." *Rodriguez v. Kaiser*, No. 1:25-cv-01111-KES-SAB (HC), 2025 U.S. Dist.
4  LEXIS 172756, at *8 (E.D. Cal. Sep. 4, 2025) (citing *Young v. Harper*, 520 U.S. 143, 147-49, 117
5  S. Ct. 1148, 137 L. Ed. 2d 270 (1997)). "[E]ven when an initial decision to detain or release an
6  individual is discretionary, the government's subsequent release of the individual from custody
7  creates "an implicit promise" that the individual's liberty will be revoked only if they fail to abide
8  by the conditions of their release." *Calderon*, 2025 WL 2430609, at *2 (citing *Morrissey v.
9  Brewer*, 408 U.S. 471, 482 (1972)). "The fact that a decision-making process involves discretion
10 does not prevent an individual from having a protectable liberty interest." *Ortega v. Bonnar*, 415
11 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Accordingly, a noncitizen released from custody pending
12 removal proceedings has a protected liberty interest in remaining out of custody. *See e.g.,
13 Ramirez Clavijo v. Kaiser*, 25-cv-06248-BLF, at 6 (N.D. Cal. Aug. 21, 2025) (collecting cases);
14 *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022).

15       In this case, Mr. Claros gained a liberty interest when the Government elected to release
16 him on July 8, 2019 on his own recognizance. Dkt. No. 12-7. This Court and many others in this
17 district have held that such a release implies a promise not to re-detain so long as the individual
18 abides by the terms of his release. *See e.g.*, *Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025
19 U.S. Dist. LEXIS 179594, at *17 (N.D. Cal. Sep. 12, 2025); *Calderon*, 2025 U.S. Dist. LEXIS
20 163056, 2025 WL 2430609, at *2.

21       The Government does not contest that it elected to release Mr. Claros on his own
22 recognizance six years ago and does not argue that he violated any term of that release. *See
23 generally* Dkt. No. 12. Instead, the Government argues that his current detention was legitimate
24 under the authority of Section 1231, which allows for discretionary detention. But the fact that
25 Mr. Claros may have been subject to discretionary detention at some earlier point under 8 U.S.C. §
26 1231(a), the statute governing noncitizen ordered removed, does not negate his liberty interest
27 where he had been released on his own recognizance instead of being detained.

28       Section 1231(a)(3) provides that if a noncitizen subject to a removal order is not removed

United States District Court
Northern District of California

within the 90-day removal period after the removal order becomes final, the noncitizen shall be subject to supervision. A noncitizen inadmissible under 8 USC 1182 "may" be detained beyond the removal period, but "if released, shall be subjection to the terms of supervision in paragraph (3)." These terms require the noncitizen to periodically appear before immigration officers, to submit to examinations, to provide information upon request, and to obey reasonable written restrictions. Section 1231(a)(3). At the time of the re-detention herein, Mr. Claros was on supervisory release.

Moreover, there are limitations on revocation of supervised release. 8 C.F.R. § 241.4 provides that supervised release may be revoked if the non-citizen violates the conditions of release. The regulation also provides that certain officials may revoke release as an exercise of discretion, where "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner" and "(i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). Upon revocation, the non-citizen is to be notified of the reasons for revocation and be provided "an initial informal interview promptly" after arrest and provided with the "opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1).

The Government does not even contend that it complied with all the requirements of 8 C.F.R. § 241.4, and the record before the Court reflects that it did not do so. Mr. Claros was not provided with a notification stating a reason for revocation or provided with an opportunity to contest the revocation. Dkt. No. 1-1 ¶ 16-18; Dkt. No. 12-7. The Government now argues that revocation of Mr. Claros' supervised release was appropriate under the regulations because the release had served its purpose once he completed his credible fear interview. Dkt. No. 12 at 5. However, this is an impermissible post-hoc justification for Mr. Claros' arrest. *See e.g.*, *Garcia v. Kaiser*, No. 4:25-cv-06916-YGR, 2025 U.S. Dist. LEXIS 178531, at *12 (N.D. Cal. Aug. 29, 2025) (declining to consider post-hoc rationalization for detention raised for the first time in litigation). The Government's internal documentation of the arrest makes no mention of a

6

determination of revocation, much less the reason for any revocation, and states only that Mr. Claros was advised that he was "under arrest for violating immigration law." Dkt. No. 12-7 at 2. Even were this justification not post-hoc, it is insufficient. Mr. Claros appealed his reasonable fear determination before he was arrested, meaning that the reasonable fear process was still ongoing at the time of his arrest and thus that the release had not "served its purpose." Indeed, just days after Mr. Claros was detained, an immigration judge *reversed* the negative determination made at his reasonable fear interview and scheduled him for further proceedings. Dkt. No.14-2; Dkt. No. 14-3.

In *Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 U.S. Dist. LEXIS 163060 (N.D. Cal. Aug. 21, 2025), the district court granted a preliminary injunction under almost identical circumstances as those here. Like Mr. Claros, the petitioner in *Alva* re-entered the United States after a prior removal. *Id.* at *2. His removal order was reinstated, but he was released on supervision and for six years lived in the community and attended regular check-ins. *Id.* at *3. In August, 2025, after appearing for his reasonable fear interview and receiving an adverse determination—which he appealed on the spot—, he was detained by ICE, with Section 1231(a) cited by the Government as the basis for detention. *Id.* at *4. The court found that Section 1231(a) provides for discretionary, not mandatory, detention of noncitizens like Mr. Alva or Mr. Claros. *Id.* at *6-7. When the Government exercises that discretion in favor of supervised release, this creates a protected liberty interest. *Id.* at *9 (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond."); *see also Guillermo M.R. v. Kaiser*, No. 25-cv-05436, 2025 U.S. Dist. LEXIS 138205, at *13 (N.D. Cal. July 17, 2025) (non-citizen subject to Section 1231(a)(6) has protected liberty interest). Here, too, Mr. Claros has a protected liberty interest in remaining out of custody.

The Government cites *Johnson v. Guzman-Chavez*, 594 U.S. 523 (2021) for the proposition that individuals detained under § 1231(a)(6) are "not entitled" to a bond hearing, but *Johnson* was a statutory construction case that held that Section 1231, rather than Section 1226, is the applicable detention authority for non-citizens subject to reinstated orders of removal. The Court thus found that the petitioners in *Johnson* had no *statutory* right to a bond hearing, but

7

*Johnson* did not consider a due process claim. *Id.* at 532-33. Indeed, concerning due process, the Ninth Circuit has observed that the "liberty interests of persons detained under § 1231(a)(6) are comparable to those of persons detained under § 1226(a)," which does provide for bond hearings. *Diouf v. Napolitano*, 634 F.3d 1081, 1086–87 (9th Cir. 2011).

The caselaw governing "prolonged detention" cited by the Government is likewise inapplicable here.[2] These cases concern already detained non-citizens seeking a second custody determination due to the passage of time. *See Zadvydas v. Davis*, 533 U.S. 678, 684 (2001). But Mr. Claros was initially released by the Government, not detained, and has been living on his own recognizance in his community for six years. Nothing in the prolonged detention caselaw "provides the government with carte blanche to re-detain noncitizens without any process so long as the detention lasts under three months." *Alva*, 2025 U.S. Dist. LEXIS 163060, at *10–11 (citing *Zadvydas*, 533 U.S. 678).

Because Mr. Claros has a significant liberty interested in his continued freedom, the first factor favors him.

2. The Risk of Erroneous Deprivation Is High

The second factor, the risk of erroneous deprivation, also weighs in Mr. Claros' favor. Once a liberty interest is established, the question is whether process – a hearing – would lessen the risk of an erroneous detention. Where an individual has not received a bond or redetermination hearing, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025). While the Government argues that Mr. Claros is a flight risk or danger to the public due to "multiple criminal arrests and a conviction for battery," the sole conviction the Government raises is from

---

[2] The parties also dispute whether Mr. Claros' removal is "reasonably foreseeable," given that he has now been found to have a credible fear of returning to Honduras, but this question is only relevant if the Court applies the prolonged detention cases. In any case, Mr. Claros' removal is not reasonably foreseeable, given that he is in withholding proceedings as to his country of origin, Honduras, and the mere possibility that the Government could attempt to remove him to some other, unidentified country does not meet the standard of reasonable foreseeability. *See e.g.*, *Karem Tadros v. Noem*, No. 25cv4108 (EP), 2025 U.S. Dist. LEXIS 113198, at *10 (D.N.J. June 13, 2025) (removal not reasonably foreseeable when Government had not yet identified a third country willing to accept the petitioner).

8

2011.  Dkt. No. 12 at 8; Dkt. No. 14 at 3.  The Government previously made the determination to release Mr. Claros on his own supervision despite this 2011 conviction.  Dkt. No. 6-6 at 1; *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (decision to release reflects "a determination by the government that the noncitizen is not a danger to the community or a flight risk").  While the Government also raises a single post-2011 arrest, Mr. Claros has presented evidence that he was not arrested under state law, because he was released without the filing of a criminal complaint.  Dkt. No. 14-4 (Letter from San Francisco District Attorney); Cal. Pen. Code § 849(c) (arrest in these circumstances deemed "detention only").  Given the other evidence of Mr. Claros' six-year history of compliance with ICE check-ins, his many recent appearances before ICE and the immigration court, and the letters of attestation from his community, it is not clear that an immigration judge would find him a flight risk or danger to the community.  In short, there is no adverse evidence suggesting Mr. Claros presents a greater flight risk now than when he was released, especially given that he has since received a favorable determination on his fear of persecution.  The second factor thus slightly favors Mr. Claros.

3. The Government's Interest

The Government has failed to show any countervailing interest against a providing a pre-detention hearing.  "In immigration court, custody hearings are routine and impose a 'minimal' cost."  *Singh*, 2025 WL 1918679, at *8 (citing *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *2 (E.D. Cal. Mar. 3, 2025).  There is no concern with a hearing delaying the Government's efforts to remove Mr. Claros either.  Any such delay would be minimal, and in any case, Mr. Claros is now in withholding proceedings due to the immigration judge's reversal of the asylum officer's reasonable fear determination.  The Government conducting a pre-detention hearing will not obstruct this process.

While the Government argues that an additional hearing "adds further congestion to an already backlogged immigration-court system," the Government cannot raise a self-created backlog as justification for not providing due process.  *See e.g.*, Federal News Network (Nov. 13,

2025), https://federalnewsnetwork.com/workforce/2025/11/immigration-courts-understaffed-and-overwhelmed-as-trump-administration-surges-enforcement-hiring/ (number of immigration judges has dropped from 700 to 600 primarily due to involuntary terminations by the current administration).  And detention for its own sake is not a legitimate governmental interest.  *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025) ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.").

### B. Mr. Claros Faces Irreparable Harm

Mr. Claros has demonstrated a likelihood of irreparable injury in the absence of temporary relief.  The likely unconstitutional deprivation of liberty that he faces is in itself an immediate and irreparable harm.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005).  "[I]t follows inexorably from [the] conclusion" that Mr. Claros' detention without a hearing is "likely unconstitutional" that he has "also carried [their] burden as to irreparable harm."  *Hernandez*, 872 F.3d at 995.

Further, Mr. Claros has demonstrated that his detention will work irreparable harm on his health and wellbeing, as well as the health and wellbeing of his family.  Dkt. No. 5 at 24; Dkt. No. 6-3 (Declaration of Julia Marilin Claros, Wife of Mr. Claros) (describing the impact of her husband's detention on herself and her children, particularly in light of her ongoing medical issues, for which she was recently hospitalized); Dkt. No. 6-4 (Declaration of Bryan Josue Ortiz, Brother of Mr. Claros) (describing the impact that Mr. Claros' detention has had on himself, as well as Mr. Claros' wife and children, noting Mr. Claros' close involvement in his children's lives); Dkt. No. 6-5 (Letter from Natalia Arguello, Tenderloin Community Elementary School Social Worker) (declaring that Mr. Claros' detention threatens the emotional, psychological, and academic welfare of his second-grade and fourth-grade-age children, one of whom receives school

10

therapy for past trauma, and emphasizing the "loving and engaged role" that Mr. Claros plays in his children's lives); *see also Hernandez*, 872 F.3d at 995 (recognizing as irreparable harm the "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained").

The Government argues that Mr. Claros' claimed irreparable harms are "too tenuous" to support a preliminary injunction because the harm arises from detention itself, not the absence of a bond hearing. Dkt. No. 12 at 10. The Government's theory is apparently that, because Mr. Claros could still hypothetically be re-detained after notice and a hearing under the preliminary injunction he seeks, he suffers no irreparable harm from being detained in violation of his constitutional rights. This argument does not follow. The harm of an unconstitutional detention is different in character than the harm from a legal detention after constitutionally sufficient process. The possibility that Mr. Claros could be detained legally under the preliminary injunction he seeks does not obviate the harm he would suffer from a likely unconstitutional detention. *See Hernandez*, 872 F.3d at 995. Moreover, the government's assertion that he may be detained in any event after a due process hearing is speculative on the current record.

The Government also repurposes its merits arguments, contending that Mr. Claros has failed to show a likelihood of success on the merits, that there is no irreparable harm because detention during removal proceedings is "valid", and that Mr. Claros can only seek review of his detention after six months. Dkt. No. 12 at 10. But the Court has already found otherwise, as discussed above.

C. <u>The Balance of Equities and the Public Interest Favor Mr. Claros</u>

As this Court and others in this district have concluded under similar circumstances, "the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. While the Government asserts a "public interest in the application of the law," the government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Aceros v. Kaiser*,

11

No. 25-cv-06924-EMC (EMC), 2025 U.S. Dist. LEXIS 179594, at *39 (N.D. Cal. Sep. 12, 2025) ("[T]he Government faces no real injury from abiding by the Constitution."). On the contrary, as this Court has observed in similar circumstances, "summarily detaining noncitizens who dutifully appear at ICE offices and immigration courts *undermines* legitimate government interests." *Aceros*, 2025 U.S. Dist. LEXIS 179594, at *38 (emphasis added). Indeed, the DHS has previously recognized that "[e]xecuting civil immigration enforcement actions in or near a courthouse may chill individuals' access to courthouses, and, as a result, impair the fair administration of justice." *Id.* (citing Department of Homeland Security, April 27, 2021 Civil Immigration Enforcement Actions in or Near Courthouses Memorandum).

At most, the government faces a short delay in re-detaining Mr. Claros and the "minimal cost" of a custody hearing. *See Singh v. Andrews,* No. 1:25-cv-00801-KES-SKO (HC), 2025 U.S. Dist. LEXIS 132500, at *22 (E.D. Cal. July 11, 2025); *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983).

The balance of hardships thus tip sharply in favor of Mr. Claros. Moreover, the public interest also weighs heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

The final factor thus favors relief.

## IV. CONCLUSION

For the forgoing reasons, Mr. Claros' request for a preliminary injunction is **GRANTED**. The Government is **ENJOINED AND RESTRAINED** from

(1) Re-detaining Mr. Claros without a pre-deprivation hearing before a neutral decisionmaker where the Government bears the burden of demonstrating by clear and convincing evidence that Mr. Claros is a flight risk or a danger such that his physical custody is required; and

(2) Removing Mr. Claros from the United States pending these proceedings.

**IT IS SO ORDERED**.

Dated: December 2, 2025

_____
EDWARD M. CHEN
United States District Judge