United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ENIL JABIB CLAROS,
Plaintiff,
v.
SERGIO ALBARRAN, et al.,
Defendants.

Case No. 25-cv-09473-EMC

**ORDER GRANTING MOTION TO ENFORCE PRELIMINARY INJUNCTION AND REMANDING**

Docket No. 29

On April 1, 2026, this Court entered a preliminary injunction enjoining the Government from "(1) Re-detaining Mr. Claros without a pre-deprivation hearing before a neutral decisionmaker where the Government bears the burden of demonstrating by clear and convincing evidence that Mr. Claros is a flight risk or a danger such that his physical custody is required; and (2) Removing Mr. Claros from the United States pending these proceedings." Dkt. No. 18. Following entry of the preliminary injunction, the Government moved in immigration court for a pre-deprivation hearing for Mr. Claros. Dkt. No. 23 at 1. Mr. Claros sought to prevent this hearing on the grounds that Mr. Claros was entitled under the injunction to a neutral decisionmaker, and that the immigration court would not provide such an adjudication. Dkt. No. 23. The Court denied this request but reminded the parties that it has continuing jurisdiction to enforce compliance with its PI order. Dkt. No. 25.

On July 15, 2026, a bond hearing was held for Mr. Claros in immigration court. In a written decision following the hearing, the immigration judge held that DHS met its burden to establish by clear and convincing evidence that Mr. Claros is a flight risk. Dkt. No. 30-3. Following this determination, DHS did not take Mr. Claros back into custody but maintains that it may do so at any time. Dkt. No. 43-1 ¶ 3; Dkt No. 39 at 8. Mr. Claros seeks a temporary

restraining order against his redetention and moves to enforce the Court's prior PI Order. Dkt. Nos. 31, 32.

## I. BACKGROUND

Mr. Claros is 34 years old, and father to three children ages seven, nine, and fourteen. Dkt. No. 5 at 6; Dkt. No. 6-3 at 1. Mr. Claros was born in Honduras but was brought to the United States as a child and has lived in this country for most of his life. Dkt. No. 5 at 6. In April of 2011, Mr. Claros was convicted for battery. Dkt. No. 12-1. DHS encountered Mr. Claros due to his conviction and served him with a Notice to Appear. *Id.* Mr. Claros did not contest the removal order and in June of 2011 was removed from the United States. *Id.* In 2019, Mr. Claros reentered the United States with his family, seeking asylum. Dkt. No. 5 at 6.

Upon crossing the United States border on July 7, 2019, Mr. Claros was detained by Customs and Border Patrol. Dkt. No. 12-1 ¶ 14. Mr. Claros was issued a Form I-871, Notice of Intent/Decision to Reinstate Prior Order, reinstating the 2011 removal order. *Id.* ¶ 15. Mr. Claros claimed a fear of returning to Honduras and was referred to Citizenship and Immigration Services for a reasonable fear interview. *Id.* ICE released Mr. Claros on his own recognizance pursuant to Section 236 of the immigration and Nationality Act (8 U.S.C. 1226) to await his Reasonable Fear Interview. Dkt. No. 6-6 at 1. The release was subject to appearing for regular check-ins. *Id.*

For the next six years, Mr. Claros lived at liberty with his family in San Francisco. Dkt. No. 5 at 7. In June of 2021, Mr. Claros was arrested for a felony violation of California Penal Code 273.5 (domestic violence) but was not prosecuted. Dkt. No. 12-1. The San Francisco Office of the District Attorney has submitted a letter stating that no formal charges were filed against Mr. Claros in connection with the arrest because the matter was discharged for lack of evidence. Dkt. No. 14-4.

On February 13, 2025, Mr. Claros filed a Form I-192, Petition for Advance Permission to Enter as Nonimmigrant, as well as a Petition for U Nonimmigrant Status, which is available to victims of certain criminal activity who are helpful to law enforcement in prosecuting the activity. Dkt. No. 5 at 7; 8 U.S.C. § 1101(a)(15)(U). The U Petition was based on severe child abuse

United States District Court
Northern District of California

suffered by Mr. Claros, based on which a court ordered him removed from his parents' custody. *Id.*

On November 3, 2025, Mr. Claros appeared at the San Francisco Asylum Office for a Reasonable Fear Interview, along with his counsel. Dkt. No. 1-1 ¶ 11. After Mr. Claros testified, he was informed that he had been determined to not have a reasonable fear of returning to Honduras. *Id.* ¶ 15. ICE agents then entered the room and detained him. *Id.* ¶ 16.

On November 4, 2025, Mr. Claros filed a motion for a temporary restraining order, which this Court granted. Dkt. No. 5, 9. On November 10, an IJ found that Mr. Claros had a reasonable fear of persecution or torture in Honduras. Dkt. No. 14-2 (Order of Immigration Judge). The IJ vacated the prior negative Reasonable Fear Interview determination and placed Mr. Claros in withholding-only proceedings. *Id.*

On December 2, 2025, this Court granted Mr. Claros' motion for preliminary injunction and enjoined the Government from "Re-detaining Mr. Claros without a pre-deprivation hearing before a neutral decisionmaker where the Government bears the burden of demonstrating by clear and convincing evidence that Mr. Claros is a flight risk or a danger such that his physical custody is required." Dkt. No. 18 at 13.

<u>Bond Hearing and IJ Decision</u>

Mr. Claros' bond hearing was conducted on July 15, 2026. Dkt. No. 43-6. At the hearing, all parties agreed that DHS held the burden to prove that Mr. Claros was a danger or a flight risk by clear and convincing evidence. Mr. Claros submitted a prehearing statement and letters of support from his family, therapists, and community members.

As an initial evidentiary matter, Mr. Claros objected to DHS' exhibit of an FBI rap sheet dated May 4, 2026 as unreliable because it includes Mr. Claros' juvenile criminal history even though such history is confidential under California law. The IJ reserved decision on Mr. Claros' motion to suppress the juvenile records but noted that he considered Mr. Claros' full criminal record relevant and that the question was how much weight it should be given. The IJ indicated he would place less weight on criminal activity more distant in time.

United States District Court
Northern District of California

Mr. Claros was the sole witness to testify at the hearing. He testified that he currently lives at a warehouse where he parks vehicles near the Chase center. He does not pay rent or utilities but is allowed to live for free because he has worked there for the past five years, although he only moved to the warehouse a year ago. He is paid for his work in cash under the table without being provided a form 1099 by his employer. He has never filed a tax return. He testified that he has tried to apply for work authorization but was denied. Beyond the car valet job, Mr. Claros also takes odd jobs cleaning houses and backyards. Mr. Claros was not able to estimate how much money he makes annually.

Mr. Claros testified that he has lived separately from his wife since 2025. He said the reason was convenience because at the shelter he was not allowed to work late night jobs, such as valeting, due to the shelter's 9pm curfew. The couple's youngest child lives with him. He testified that he and his wife co-parent all three of their together. Mr. Claros picks up and drops off the children from school, activities, and appointments. He provides food, money, basic clothing, and other necessities like hygiene products.

Mr. Claros testified about his arrest for domestic violence in 2021. He testified his wife confronted him about speaking to another man. She grabbed his phone, struck him, and started calling him homophobic slurs. Mr. Claros called the police. When the police came, they arrested him. Mr. Claros was later released without charges being pressed. Ms. Claros did not testify at the hearing after the IJ noted that there was a potential conflict of interest between the Mr. and Ms. Claros due to this incident.

Mr. Claros testified that he has never missed an immigration court hearing or appointment. He has not left the United States at all since 2019. He has two brothers and six sisters who live in the United States, all of whom are U.S. citizens. His aunt, grandmother and mother are legal residents and citizens but his mother is in Honduras. Neither of his children were born in the United States.

Following the hearing, the IJ issued a five-page written decision finding that Mr. Claros was a flight risk. Dkt. No. 30-3. The IJ began by noting that this Court's PI order did not explicitly state which factors should be considered in the pre-deprivation hearing. Finding the

hearing analogous to a bond determination, the IJ determined to apply the *Guerra* bond hearing factors. These include (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of other offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). The IJ analyzed each factor in turn.

<u>Factor 1: Fixed Address.</u> Mr. Claros testified that for the last year he had lived in a warehouse owned by his employer. *Id.* at 3. Prior to that, he lived at a homeless shelter. Mr. Claros is not formally employed by the employer, does not have a formal lease agreement, and does not pay rent or utilities. The IJ found that this living situation did not constitute a fixed, stable address, weighing against Mr. Claros.

<u>Factor 2: Length of Residence in the U.S</u>. The IJ found that this factor weighed in favor of Mr. Claros because he has resided in the U.S. for at least seven years.

<u>Factor 3: Family ties in the U.S.</u> The IJ found that Mr. Claros' wife and two children live in the U.S. but that they have no legal status and that Mr. Claros lives separately from his wife and one of his children. Mr. Claros has other family members in the U.S., including siblings. Noting that these family members have not sponsored Mr. Claros for a green card, the IJ found that this factor was neutral.

<u>Factor 4: Employment history.</u> The IJ found that Mr. Claros has never held formal employment, filed a tax return, paid taxes, or obtained work authorization. He has worked for cash, "informally and unlawfully." The IJ found that this factor weighed against Mr. Claros. The IJ did not mention that Mr. Claros had worked for his current employer for the past five years.

<u>Factor 5: Court appearances.</u> Because the record reflected no missed court appearances, the IJ found this factor to weigh in favor of Mr. Claros.

Factor 6. Criminal record. The IJ found that Mr. Claros has a criminal history. In 2011, he was convicted of misdemeanor battery and sentences to 20 days in jail and three years probation. In 2021, he was arrested on charges of felony domestic violence but the matter was dropped by the DA. The IJ noted that Mr. Claros admitted at the hearing to ongoing tax evasion since his arrival in the U.S. in 2019 by working continuously without filing a tax return. The IJ found this factor to weigh against Mr. Claros.

Factor 7: History of immigration violations. The IJ found that Mr. Claros' unlawful entry in 2019 weighed against him.

Factor 8: Attempts to flee prosecution. As the record reflected no attempts to flee prosecution, this factor weighed in favor of Mr. Claros.

Factor 9: Manner of entry into the U.S. Noting that this factor overlapped with Factor 7, the IJ found that Mr. Claros entry into the U.S. without admission or parole weighed against Mr. Claros.

Overall, the IJ found that factors 2, 5, and 8 were in Mr. Claros' favor, factors 1, 4, 6, and 7/9 weighed against him, and that factor 3 was neutral. The IJ was "particularly troubled" by Mr. Claros' "tenuous living situation" and "the fact that his wife and one of his children have opted to live elsewhere." *Id.* at 4. The IJ found that his work arrangements "in additional to being unlawful, are similarly informal and tenuous." The IJ also characterized Mr. Claros' criminal history as "less than stellar," noting that Mr. Claros' wife did not testify at the hearing to provide her side of the story about the domestic violence incident. This was troubling due to the conflict identified by the IJ in the dual representation of Mr. Claros and his wife. The IJ also noted that Mr. Claros is ineligible for asylum due to his violation of a removal order and cannot obtain legal status through removal proceedings, only withholding or CAT protection, which only prevent Mr. Claros from being deported to Honduras. The IJ acknowledged that Mr. Claros has filed for U-Status, which could create a path toward legal status, but noted that such grants are capped annually, have a potential processing time of over a decade, and that given Mr. Claros' arrest history, denial would "not be unexpected." The IJ concluded that the Government had carried its burden to establish by clear and convincing evidence that Mr. Claros was a flight risk. The IJ did

United States District Court
Northern District of California

not find that Mr. Claros was a danger to the community.

## II. LEGAL STANDARD

A habeas court "[i]n light of *Martinez*, may review an IJ's finding that an alien poses a flight risk for abuse of discretion." *Zaitsev v. Warden of Adelanto ICE Processing Ctr.*, No. 26-CV-454-SPG-AS, 2026 U.S. Dist. LEXIS 30181, 2026 WL 391429, at *10 (C.D. Cal. Feb. 9, 2026) (collecting cases). "Though what constitutes flight risk is 'malleable and involves agency discretion,' it is 'still a legal standard so long as federal courts can assess whether an IJ correctly applied the statutory standard to a given set of facts.'" *Perez Velasquez*, 2026 U.S. Dist. LEXIS 85165, 2026 WL 1042479, at *5 (quoting *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024)). Abuse of discretion review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." *Martinez*, 124 F.4th at 785. "Thus, 'the Court must decide whether the IJ relied upon proof that—as a matter of law—could not establish' the conclusion drawn." *Perez Velasquez*, 2026 U.S. Dist. LEXIS 85165, 2026 WL 1042479, at *5 (quoting *Kharis v. Sessions*, No. 18-CV-4800-JST, 2018 U.S. Dist. LEXIS 190082, 2018 WL 5809432, at *5 (N.D. Cal. Nov. 6, 2018)) (cleaned up).

The Ninth Circuit does not require the IJs making flight risk assessments to "discuss each piece of evidence submitted." *Martinez*, 124 F.4th at 785. In the absence of "red flags," reviewing courts are to take the immigration court "at its word" that it properly assessed the entire record. *Id.* Similarly, reviewing courts accept that an IJ "applied the correct legal standard" if they "expressly cited and applied [the relevant caselaw] in rendering its decision." *Id.* (citing *Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009). "But when there is an indication that something is amiss, like if the IJ "misstat[es] the record" or "fail[s] to mention highly probative or potentially dispositive evidence," reviewing courts do not credit the IJ's use of a "catchall phrase" to the contrary." *Id.* Nor may an IJ merely pay 'lip service' by reciting the appropriate legal standard but not actually applying that standard. *Singh v. Warden, Golden State Annex Det.Facility*, No. 1:26-cv-01973-DAD-CSK, 2026 U.S. Dist. LEXIS 105748, at *21 (E.D. Cal. May 12, 2026).

United States District Court
Northern District of California

A party seeking a preliminary injunction or TRO must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

### A. Jurisdiction

As the Court noted in its prior order denying Petitioner's request to hold the IJ hearing in abeyance, this Court has continuing jurisdiction to enforce compliance with its PI order. *See e.g., Bayani v. Larose*, No. 26-cv-00266-JES-VET, 2026 U.S. Dist. LEXIS 102798, 2026 WL 1270059, at *3 (S.D. Cal. May 8, 2026) ("District courts have the authority to review compliance with prior orders granting habeas relief, including orders for bond hearings.") (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011)). And the Court has habeas jurisdiction to review immigration detention determinations made pursuant to a court-ordered detention hearing. *See Martinez*, 124 F.4th at 782. The Government does not dispute the Court's jurisdiction here.

### B. Likelihood of Success on the Merits

Whether injunctive relief can be granted here turns primarily on whether this Court determines that the IJ abused his discretion in determining Mr. Claros to be a flight risk.

#### 1. Applicable Standard, Use of the *Guerra* Factors, and BIA Precedent

The IJ applied the bond hearing factors from the BIA's *Guerra* decision. The Ninth

Circuit has previously approved the use of the *Guerra* factors in a bond hearing ordered by a district court based on a habeas petition. *See Martinez*, 124 F.4th at 783. And courts in this circuit have found an IJ's *failure* to apply these factors to be an abuse of discretion. *See e.g.*, *Pawan Kumar Singh v. LaRose*, No. 26-CV-1425 JLS (GC), 2026 U.S. Dist. LEXIS 109736, at *12 (S.D. Cal. May 18, 2026) (IJ decision was error because there was "no evidence that the IJ considered the *Guerra* factors"); *Perez Velasquez*, 2026 U.S. Dist. LEXIS 85165, 2026 WL 1042479, at *6 ("None of the Guerra factors—nor any of Petitioner's evidence relating to those factors—were mentioned by the IJ when making her flight risk determination at the hearing or in her order."); *Jose G.M.L. v. Warden*, No. 1:26-cv-00047-TLN-EFB, 2026 U.S. Dist. LEXIS 151777, at *13 (E.D. Cal. July 8, 2026) (flight risk determination unsupported where the "IJ did not discuss any of the *Guerra* factors"). Petitioner concedes that "The *Guerra* factors could certainly supply relevant guidance for pre-deprivation hearings," Dkt. No. 43 at 4, but argues that because the *Guerra* factors originate from the bond hearing context where the burden is different, that the IJ cannot not apply the *Guerra* factors without an "explanation of how the IJ adapted the default *Guerra* framework to fit the heightened burden of a pre-deprivation hearing for a non-detained noncitizen." *Id.* However, whether the IJ correctly placed the burden on the Government is different issue than whether the *Guerra* factors were a proper analytical foundation for the determination. Given that these are the factors immigration courts customarily use to assess flight risk, and given that the Ninth Circuit has approved their use in a comparable habeas-ordered hearing context, the Court finds that the IJ was correct to apply the *Guerra* framework.

Petitioner contends that the IJ applied an incorrect standard by not requiring DHS to show a material change of circumstances since 2019 to make Mr. Claros a flight risk, citing *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981), which requires a showing a change of circumstance before redetention. *Sugay* concerns subsequent bond hearings; it has limited application where the initial release was made not by a bond hearing but by DHS agents in their discretion. Of course, such a DHS release is not without significance. The DHS release reflected "a determination by the government that the noncitizen is not a danger to the community or a flight risk." *See Saravia v. Barr*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. *Saravia v. Sessions*, 905

F.3d 1137 (9th Cir. 2018). Some degree of changed circumstance analysis is thus implicit in the determination where the non-citizen has previously been released on supervision. It would likely be error if the IJ had relied exclusively on information known to DHS at the time of initial release, such as Mr. Claros' juvenile battery conviction as the sole basis for detention absent any changed circumstance. But since there was no formal record of the facts relied on by DHS when Mr. Claros was initially released, the IJ could not have been expected to conduct a formal changed circumstance analysis. Nonetheless, the DHS officer, in releasing Mr. Claros, had to have concluded he did not pose such a significant flight risk and danger to the community so as to warrant detention. *See* Dkt. No. 6-6. This determination has some relevant and probative value.

The Court finds that the IJ applied the correct analytical framework. The next question is whether the IJ abused his discretion in how he applied that standard, given the "clear and convincing" burden of proof born by the Government.

2. Whether the IJ Abused His Discretion in Applying Guerra Factors

The *Guerra* factors include (1) whether the non-citizen has a fixed address in the United States; (2) the non-citizen's length of residence in the United States; (3) the non-citizen's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the non-citizen's employment history; (5) the non-citizen's record of appearance in court; (6) the non-citizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of other offenses; (7) the non-citizen's history of immigration violations; (8) any attempts by the non-citizen to flee prosecution or otherwise escape from authorities; and (9) the non-citizen's manner of entry to the United States. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). *Guerra* provides that an IJ may consider facts and circumstances besides the nine enumerated factors. *Id.* A conclusory determination by the IJ that does not address the evidence presented constitutes an abuse of discretion. *See Kumar v. Rios*, No. 5:26-cv-01988-MAR, 2026 U.S. Dist. LEXIS 137802, at *17 (C.D. Cal. June 12, 2026) (IJ order that "fail[ed] to include any indication that the Immigration Judge considered any of the relevant factors in determining that Petitioner posed a flight risk" was

abuse of discretion) (emphasis in original). In *Jose G.M.L.*, a flight risk finding was unsupported by the record as a matter of law where Petitioner "made the showing that he has maintained a stable residence and employment, is a long-term member of his community of 34 years, has deep familial ties in the United States including children, siblings, and parents, and he submitted letters of support including financial information," and the only contrary evidence was a 20-year-old conviction. *Jose G.M.L. v. Warden*, No. 1:26-cv-00047-TLN-EFB, 2026 U.S. Dist. LEXIS 151777, at *13 (E.D. Cal. July 8, 2026); *see also H.F. v. Albarran*, No. 1:25-cv-01795-TLN-EFB, 2026 U.S. Dist. LEXIS 170945, at *13 (E.D. Cal. July 30, 2026) (reversing IJ where IJ properly applied *Guerra* factors but "the evidentiary record before the IJ was legally insufficient to find the government had proven by clear and convincing evidence that Petitioner is a danger to the community").

Here, the IJ applied each of the *Guerra* factors, finding some to weigh in favor of Petitioner and some against. *C.f.*, *Y.S.G. v. Andrews*, No. 2:25-cv-1884-SCR, 2025 U.S. Dist. LEXIS 208276, at *34 (E.D. Cal. Oct. 27, 2025) (flight risk finding by relying "exclusively" on other denials of relief by petitioner in immigration court was abuse of discretion). Petitioner's lengthy duration of residence in the United States, his spotless record of appearing in court, and the fact that he has never attempted to flee the authorities weighed in Petitioner's favor. The IJ weighed as neutral the family ties factor because even though Petitioner indicated significant family ties, none of his family members had tried to sponsor him. The IJ also considered the fact that Petitioner had a pending U-Visa petition, which could provide a potential path to citizenship. The IJ found these positive and neutral factors outweighed by the factors of fixed address, employment history, criminal record, history of immigration violations, and manner of entry into the United States. The IJ placed particular emphasis on Petitioner's "tenuous" living situation, the fact that his wife and one of his children opted to live separately from him, and Petitioner's "tenuous," "informal," and "unlawful" employment situation, as well as Petitioner's criminal record. The IJ did not explicitly discuss in his decision how the letters of support submitted by Petitioner's family, therapists, and community members impacted his analysis. The IJ referenced these letters in passing in the hearing but did not discuss them at all in his decision.

The IJ's decision reflects a mixed record that this Court, reviewing for abuse of discretion, will not reweigh. However, although IJs are not required to discuss "each piece of evidence submitted," an IJ's "fail[ure] to mention highly probative or potentially dispositive evidence," is an abuse of discretion. *Martinez*, 124 F.4th at 785. Petitioner submitted almost a hundred pages of letters and testimonials from family and community members. These testimonials consistently emphasize Mr. Claros' commitment to his children and deep community ties, including his ties to his employment and those around him. Dkt. No. 30-7. The Government admits that these community letters reflect "emotional and financial support from community members." Dkt. No. 39 at 3. The letters are highly probative of whether Mr. Claros is a flight risk. Deep ties to his children and family are a highly relevant factor in assessing flight risk, even if those ties do not necessarily provide a path to citizenship. *C.f. United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1143 (D. Idaho 2023) ("Where the balance of an alien defendant's immediate family - parents, siblings, spouse, and children - reside in the jurisdiction and the United States, and the defendant maintains a close relationship with them, that alien defendant is less likely to flee than another alien defendant who lacks such familial anchors here."). The letters also strongly suggest that, despite Petitioner's informal housing arrangement, he is enmeshed in and supported by his community including the employment context where he currently lives, another factor that is highly probative against flight risk. *C.f. id*. ("Like family ties, community ties are predictive of serious risk of flight. An [undocumented] defendant with a strong and well-defined network of friends, neighbors, co-workers, and parishioners in the jurisdiction and the United States presents a lesser risk of flight than an [undocumented] defendant without such a network."). The IJ's finding that the *Guerra* factor regarding family ties was neutral and that the employment factor cut against him ignores the highly probative evidence contained in the letters (along with the fact that Mr. Claros has maintained his current employment for five years) which were in the record. The IJ either did not consider this evidence or discounted it without explanation. This was an abuse of discretion, and particularly where the Government has to prove risk of flight by "clear and convincing" evidence. *See Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 U.S. Dist. LEXIS 85165, at *14-15 (S.D. Cal. Apr. 16, 2026) (abuse of discretion to ignore "highly probative

evidence regarding Petitioner's status as sole economic provider for his two-year-old daughter with complex medical needs"); *Soriano*, 2026 U.S. Dist. LEXIS 7904, 2026 WL 969764, at *5 (abuse of discretion to not consider "significant evidence showing Petitioner is fixed and stable with his family in his community").

The Court also notes that several of the facts highlighted in the IJ's decision were minimally probative of flight risk. The IJ relied on the fact that Mr. Claros has not had "lawful" employment and has committed "tax evasion" by maintaining a job "under the table" without paying taxes. But Mr. Claros has been working steadily for the same employer for five years and his employer both wrote him a letter of support and attended his hearing. The fact that he could not report his work "on the books" is a result of his immigration and work authorization status, a circumstance beyond his control; there is no evidence of a purposeful flouting or subversion of employment or tax laws. *C.f. Soriano v. Hernandez*, 830 F. Supp. 3d 1071 (W.D. Wash. 2026) ("Using the IJ's reasoning, any noncitizen applying for Cancellation of Removal who is unauthorized to work and who truthfully provides information about their employment history and tax return filings automatically is at risk of being found a flight risk").

The IJ's consideration of Mr. Claros' criminal history also raises concerns. The Government asserts that the IJ did not actually rely on Mr. Claros' criminal history to support the flight risk finding. Dkt. No. 39 at 4. However, the IJ listed criminal history as a factor weighing against Petitioner without any indication that he had discounted that factor as only supporting dangerousness. To credit criminal history as evidence of flight risk, rather than dangerousness, without an obvious nexus to flight risk, the IJ must explain what nexus exists. *See Fletes-Velasquez v. Hernandez*, No. C26-1908 TSZ, 2026 U.S. Dist. LEXIS 145147, at *8 (W.D. Wash. June 29, 2026) (holding that "immigration judge inappropriately considered petitioner's arrests, which never ripened into convictions" and "failed to explain how an arrest for assault, as opposed to attempting to elude a pursuing police vehicle, bail jumping, escape, resisting arrest, or the like, constitutes evidence of a 'flight risk.'"). Mr. Claros' battery conviction, which DHS was aware of when it initially released him in 2019, and his 2021 arrest, which did not result in a conviction, have no obvious nexus to his current flight risk, at least not one identified by the IJ.

Because the IJ failed to consider highly probative evidence and appeared to rely on evidence that has little probative value, a failure which is especially consequential in view of the applicable standard of clear and convincing evidence, the IJ abused his discretion. Mr. Claros has thus demonstrated a likelihood of success on the merits.

**C. Remaining Winters Factors**

Although Mr. Claros has not yet been redetained, his risk of redetention in light of the IJ ruling is sufficiently imminent to support injunctive relief. *See* Dkt. No. 43-1 ("DHS is not providing assurances that [Mr. Claros] will not be detained"). For the reasons discussed in the Court's prior order, detention here would constitute irreparable harm. Dkt. No. 18. The evidence adduced at the hearing further supports that Mr. Claros' detention would cause irreparable harm to Mr. Claros' children. As to the combined factor of the government and public interest, to the extent Mr. Claros is improperly deemed a flight risk and subject to detention, this factor must favor Mr. Claros.

**D. Remand**

Petitioner asks that this Court either enjoin Mr. Claros' redentention without requiring any further proceedings, or, failing that, asks that any further pre-deprivation hearing be conducted by this Court. In asking that further proceedings be conducted in this court, rather than immigration court, Petitioner again contends that the immigration courts are a fundamentally biased forum. Dkt. No. 30 at 20; Dkt. No. 25. Petitioner identifies serious concerns about political influence on immigration judges, who are agents of the executive rather than the judicial branch and do not share the same protections against political pressures as do Article III judges. The mass firings of immigration judges across the country, including the decimation of the San Francisco immigration court are concerning,[1] as are the administration's apparent renaming of immigration judges as

[1] *See* "S.F. immigration courts gutted: 21 judges down to 2 after planned departures," Mission Local (March 6, 2026), https://missionlocal.org/2026/03/s-f-immigration-courts-gutted-21-judges-down-to-2-after-planned-departures/

"Deportation judges"[2] and the stream of cases returning to habeas courts in which immigration judges have ordered detentions without conducting the reasoned and individualized assessments that due process requires. *See e.g.*, *Roberts v. Scott*, No. 2:26-cv-01333-TL, 2026 U.S. Dist. LEXIS 159240, at *27 (W.D. Wash. July 17, 2026) ("A review of recent cases in this District shows immigration judges performing incredible mental gymnastics to turn ordinary human experiences and behaviors into evidence of a risk of flight.").

However, Petitioner has presented no evidence in this record that the IJ in this case acted with systemic bias. Although the Court finds that the IJ abused his discretion in the decision rendered, the IJ's analysis does not evince such bias as to establish, at this juncture, that the IJ cannot provide a neutral forum. The Court therefore remands to the IJ for proceedings consistent with this order. While such proceedings are pending, the Government is enjoined from redetaining Mr. Claros.

**IT IS SO ORDERED**.

Dated: 8/14/2026



EDWARD M. CHEN
United States District Judge

[2] *See* Department of Justice, https://join.justice.gov/ ("Apply today to become a deportation judge and you may be entitled to these benefits.") (accessed August 15, 2026); CBS News, "Trump administration onboards largest-ever class of new immigration judges in bid to speed up deportation cases", https://www.cbsnews.com/news/trump-administration-82-new-immigration-judges-deportation-cases/ (administration has publicly referred to newly hired IJs as "deportation judges" in official job listings).