United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ENIL JABIB CLAROS,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No. 25-cv-09473-EMC (EMC)

**ORDER GRANTING *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER**

Docket No. 5

Before the Court is Petitioner Enil Jabib Claros' *Ex Parte* Motion for Temporary Restraining Order. Dkt. No. 5. On November 3, 2025, Mr. Claros filed a Petition for Writ of Habeas Corpus against Respondents Sergio Albarran, the Field Office Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; Todd Lyons, the Acting Director of U.S. Immigration and Customs Enforcement; Kristi Noem, the Secretary of the U.S. Department of Homeland Security; and Pamela Bondi, the Attorney General of the United States. Dkt. No. 1. On November 4, Mr. Claros filed the instant motion for a Temporary Restraining Order, which Respondents opposed. Dkt. No. 5; Dkt. No. 8. Mr. Claros asks this Court to (1) order Respondents to immediately release Mr. Claros, (2) enjoin Respondents from re-detaining him, and (3) enjoin Respondents from transferring Mr. Claros out of the district or removing him from the country for the duration of these proceedings. Dkt. No. 5 at 27.

For the foregoing reasons, the TRO is **GRANTED** as modified below.

## I. BACKGROUND

Mr. Claros is 34 years old, and father to three children ages seven, nine, and fourteen. Dkt. No. 5 at 6; Dkt. No. 6-3 at 1. Mr. Claros was born in Honduras but was brought to the United

States as a child and has lived in this country for most of his life. Dkt. No. 5 at 6. In 2011, Mr. Claros received a deportation order and was removed to Honduras. *Id.* In 2019, Mr. Claros reentered the United States with his family, seeking asylum. *Id.*

Upon crossing the United States border on July 7, 2019, Mr. Claros was detained by Customs and Border Patrol. *Id.* The next day, ICE released Mr. Claros on his own recognizance pursuant to Section 236 of the immigration and Nationality Act (8 U.S.C. 1226) to await a Reasonable Fear Interview. Dkt. No. 6-6 at 1. The release was subject to appearing for regular check-ins. Dkt. No. 6-6. For the next six years, Mr. Claros lived at liberty with his family in San Francisco. Dkt. No. 5 at 7. In that time, Mr. Claros has not been arrested or had charges filed against him. *Id.* On February 13, 2025, Mr. Claros filed a Form I-192, Petition for Advance Permission to Enter as Nonimmigrant, as well as a Petition for U Nonimmigrant Status, which is available to victims of certain criminal activity who are helpful to law enforcement in prosecuting the activity. *Id.* at 7; 8 U.S.C. § 1101(a)(15)(U). The U Petition was based on severe child abuse suffered by Mr. Claros, based on which a court ordered him removed from his parents' custody. *Id.*

On November 3, 2025, Mr. Claros appeared at the San Francisco Asylum Office for a Reasonable Fear Interview, along with his counsel. *Id.* at 8. After Mr. Claros testified, he was informed that he had been determined to not have a reasonable fear of returning to Honduras. *Id.* Mr. Claros told the asylum officer that he wanted an Immigration Judge to review the negative reasonable fear finding and signed a document to that effect. Dkt. No. 1-1 at 4. ICE agents then entered the room and detained him. Dkt. No. 5 at 8. The only explanation provided by the ICE agents for the arrest at the time was that Mr. Claros had a deportation order. *Id.* The Government now represents that Mr. Claros was detained pursuant to 8 U.S.C 1231 ("Detention and removal of aliens ordered removed"). Dkt. No. 8 at 3.

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th



United States District Court
Northern District of California

Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. <u>DISCUSSION</u>

Mr. Claros has demonstrated a likelihood of success on the merits of his claim that his ongoing detention violates his procedural due process rights under the Fifth Amendment. Mr. Claros has a substantial interest in remaining out of custody, and the Due Process Clause entitles him to a bond hearing before a neutral arbitrator prior to any arrest or detention. *See Pinchi v. Noem*, No. 25-cv-05632-PCP, 2025 WL 2084921, at *2-6 (N.D. Cal. July 24, 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances); *Pablo Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases).

The fact that Mr. Claros may have been subject to detention under 8 U.S.C. § 1231(a), the statute governing noncitizen ordered removed, does not obviate his liberty interest under the current circumstances. Section 1231(a)(3) provides that if a noncitizen subject to a removal order is not removed within the 90-day removal period after the removal order becomes final, the noncitizen shall be subject to supervision. A noncitizen inadmissible under 8 USC 1182 "may" be detained beyond the removal period, but "if released, shall be subjection to the terms of supervision in paragraph (3)." These terms require the noncitizen to periodically appear before immigration officers, to submit to examinations, to provide information upon request, and to obey

United States District Court
Northern District of California

reasonable written restrictions. Section 1231(a)(3). At the time of the re-detention herein, Mr. Claros was on supervisory release.

In *Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 U.S. Dist. LEXIS 163060 (N.D. Cal. Aug. 21, 2025), the district court granted a TRO and then preliminary injunction under almost identical circumstances as those here. The petitioner in *Alva* re-entered the United States after a prior removal. *Id.* at *2. His removal order was reinstated, but he was released on supervision and for six years lived in the community and attended regular check-ins. *Id.* at *3. In August, 2025, after appearing for his reasonable fear interview and receiving an adverse determination, he was detained by ICE, with Section 1231(a) cited by the Government as the basis for detention. *Id.* at *4. The court found that Section 1231(a) provides for discretionary, not mandatory, detention of noncitizens like Mr. Alva or Mr. Claros. *Id.* at *6-7. When the Government exercises that discretion in favor of supervised release, this creates a protected liberty interest. *Id.* at *9 (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond."); *see also Guillermo M.R. v. Kaiser*, No. 25-cv-05436, 2025 U.S. Dist. LEXIS 138205, at *13 (N.D. Cal. July 17, 2025) (non-citizen subject to Section 1231(a)(6) has protected liberty interest); *cf.*, *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011) (noting that the "liberty interests of persons detained under § 1231(a)(6) are comparable to those of persons detained under § 1226(a).") Here, too, Mr. Claros has a protected liberty interest in remaining out of custody.

Mr. Claros has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that he faces is in itself an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Mr. Claros' detention without a hearing is "likely unconstitutional" that he has "also carried [their] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

Further, Mr. Claros has demonstrated that his detention will work irreparable harm on his health and wellbeing, as well as the health and wellbeing of his family. Dkt. No. 5 at 24; Dkt. No. 6-3 (Declaration of [redacted], Wife of Mr. Claros); Dkt. No. 6-4 (Declaration of Bryan Josue Ortiz, Brother of Mr. Claros); Dkt. No. 6-5 (Letter from Natalia Arguello, Tenderloin Community Elementary School Social Worker); *see also Hernandez*, 872 F.3d at 995 (recognizing the "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained").

In contrast, as other courts in this district and others have concluded under similar circumstances, "the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). At most, the government faces a short delay in detaining Mr. Claros and the "minimal cost" of a custody hearing. *See Singh v. Andrews,* No. 1:25-cv-00801-KES-SKO (HC), 2025 U.S. Dist. LEXIS 132500, at *22 (E.D. Cal. July 11, 2025); *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The balance of hardships thus tip sharply in favor of Mr. Claros. Moreover, the public interest also weighs heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Given that the balance of hardships tips sharply in his favor, Mr. Claros easily satisfies the requisite showing on the merits. He has raised at least serious question, if not an outright likelihood of success.

A TRO immediately releasing Mr. Claros is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Mr. Claros' likely illegal detention. *See e.g., Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 U.S. Dist. LEXIS 148751, at *8 (N.D. Cal. Aug. 1, 2025).

Because Petitioners satisfy all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below. This Order accords with many other recent grants of temporary relief in similar circumstances. *See, e.g.*, *Aceros v. Kaiser*, No. 25-cv-06924, 2025 WL 2453968, at *3 (N.D. Cal. Aug. 16, 2025) (granting temporary restraining order); *Alva v. Kaiser*, No. 25-cv-06676, 2025 WL 2294917, at *3 (N.D. Cal. Aug. 7, 2025) (same); *Ramirez-Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2097467, at *4 (N.D. Cal. July 25, 2025) (same); *Guillermo M.R. v. Kaiser*, No. 25-cv-05436, 2025 U.S. Dist. LEXIS 138205, at *13 (N.D. Cal. July 17, 2025) (same); *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a pre-detention bond hearing before re-arrest); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, No. 25-cv-647-DJC-DMC, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL 1676854 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody five years); *Garcia v. Bondi*, No. 25-cv-5070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody six years ); *Enamorado v. Kaiser*, No. 25-cv-4072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their]

United States District Court
Northern District of California

conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## IV. ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents are **ORDERED** to immediately release Petitioner from Respondents' custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing Petitioner from the United States.[1] This Order shall remain in effect until **November 26, 2025**.

Respondents shall provide a status report confirming Mr. Claros' release by **Thursday, November 6 at noon**.

Respondents are **ORDERED TO SHOW CAUSE** at an in-person hearing before Judge Edward M. Chen **on November 25 at 1:30 p.m.** why a preliminary injunction should not issue. Respondents shall file a response to Petitioner's motion by no later than **November 12, 2025**. Any reply shall be filed by **November 19, 2025**.

**IT IS SO ORDERED**.

Dated: November 5, 2025

EDWARD M. CHEN
United States District Judge

[1] Petitioners also asks the Court to order that Petitioner remains within the Northern District of California in order to preserve this Court's jurisdiction, but it is well-established that "when the Government moves a habeas petitioner after [he or she] properly files a petition naming [his or her] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).